# Richmond

EDITH VIRGINIA LIVESAY GRIFFIN v. RANDOLPH
WILLIAM GRIFFIN.

January 15, 1945.

Record No. 2849.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.*, and *Thomas L. Woodward*, for the appellant.

*Crumpler & Crumpler* and *James G. Martin & Son*, for the appellee.

GREGORY, J., delivered the opinion of the court.

On January 4, 1940, the appellant, Edith Virginia Livesay Griffin, filed her bill of complaint against Randolph William Griffin, asking that she be granted a divorce *a mensa et thoro* from him upon the ground of extreme cruelty amounting to constructive desertion.

The defendant filed a demurrer to the bill, in which he stated as grounds, that the bill of complaint did not state a cause of action, and that the allegations were indefinite, uncertain, obscure, ambiguous, and argumentative. The demurrer was sustained with leave to the complainant to file an amended bill within sixty days. A decree to this effect was entered. From it no appeal was sought.

The complainant failed to file the amended bill within the sixty-day period which was granted, but on February 8, 1941, she filed a second original bill praying that she be granted a divorce *a mensa et thoro* from the defendant on the same ground, extreme cruelty amounting to constructive desertion.

On April 19, 1941, the defendant filed a plea of *res adjudicata* to the second bill of complaint, in which plea it was set forth that the issues had been finally adjudicated in the prior divorce proceeding. A part of the said plea reads as follows:

"Said Edith brought suit for divorce in this court against said Randolph and filed her bill, to which he demurred and there was joinder in the demurrer, and the demurrer was argued before this court and sustained, to-wit, on the 20th day of July, 1940, as duly appears by the decree entered that day

by this court, and that decree granted her leave to file an amended bill within sixty days, which amended bill she never filed, and said decree sustaining the demurrer became absolutely final and never was appealed from and remains in full force, and the parties to said former suit are identically the same parties as are parties to this present suit, in the former suit the plaintiff styling herself Edith L. Griffin and styling the defendant Randolph Griffin, and all the matters involved in the present suit were involved and covered by the former suit, and there is no new cause of action or cause of suit occurring since said former suit was commenced."

On October 4, 1943, the complainant moved the circuit court to strike out the defendant's plea of *res adjudicata*. This motion was overruled, the plea was sustained, the bill dismissed, and the cause ordered removed from the docket. A decree was entered to this effect, and it is from that decree the present appeal was allowed.

The sole assignment of error is directed to the action of the court in sustaining the defendant's plea of *res adjudicata* and dismissing the complainant's second bill of complaint.

If the action of the court in the prior proceeding amounted to a determination of the cause upon its merits, then the court correctly sustained the defendant's plea of *res adjudicata* and dismissed the second bill of complaint.

It was conceded at the bar of this court that no new grounds for divorce were set up in the second bill of complaint, and that all of the allegations in that bill could have been set up in an amended bill.

There was no change in the status of the parties between the time of the filing of the first bill and of the filing of the second bill. Every fact alleged in the second bill existed at the time of the filing of the first. They had separated on September 26, 1939, and since that time they have never lived together or become reconciled.

In the first bill of complaint appears this allegation:

"Your complainant further avers that for practically all of their said married life the said defendant has been cruel, abusive and violent to her, even to the point of beating her

on several occasions; that he has failed to provide for her wants although amply able to do so, that he has withheld from her the means to purchase food and clothing in quantity and of a quality sufficient to provide your complainant in such condition as from his means and position in life your complainant has had reason to expect and the right to demand, but on the contrary your complainant has been forced to work in order to get money with which to buy her clothing and to purchase furnishings for the home wherein she and the said defendant resided, although it was, is and has been against her physical strength and constitution so to do. * * * And that by reason of said defendant's brutal treatment and public humiliation and mortification of your complainant she is and has been in great danger of her health and even of her life * * * . That the defendant has endeavored to cause her to return to him under threats of blackening her character and defaming her character if she does not return, and has endeavored to have her discharged from her place of present employment, all constituting a vicious scheme seeking the ruination of your complainant * * * . That your complainant last cohabited with the said defendant in the county of Southampton on September 26, 1939. * * * "

Upon the demurrer interposed to this bill of complaint the court held that the foregoing allegations did not constitute a good cause of action.

In her second bill of complaint, to which the plea of *res adjudicata* was sustained, the complainant alleged that the desertion occurred on the 26th day of September, 1939, and that it has ever since continued without interruption and without probability of reconciliation. She further alleged: "That in the presence of his mother he reviled her in every imaginable way and slapped her as he would a child, and generally made life unendurable * * * . That she received such treatment as would not have been accorded a servant, was criticized, reviled, rebuked, and abused, and was frequently subjected to physical punishment by the defendant. * * * And in July, 1939, went so far as to throw a dish of

strawberries in your complainant's face while sitting at the dining table, that on or about the same time defendant proceeded to whip your complainant with a fly swatter in the presence and hearing of one Vincent Lankford * * * ".

■■ The first bill of complaint was clearly demurrable because its allegations were too indefinite and uncertain. They did not set forth a good cause of action. The allegations in the second bill of complaint are a little more specific but they do not set forth a new cause of action or one that is substantially different from the original cause of action set forth in the first bill.

■■ Under Code, sec. 6118 (Michie), on demurrer, the court shall not regard any defect or imperfection in the declaration or other pleading unless there be omitted something so essential to the action or defense that judgment according to law and the very right of the case cannot be given. Under Code, sec. 6104, the court may in the furtherance of justice in any suit or action permit any pleading to be amended or material supplemental matter be set forth in an amended or supplemental plea upon such terms as the court may deem just. Defects and errors which do not affect the substantial rights of the parties are disregarded.

■■ It is apparent that the purpose of these statutes is that demurrers challenging pleadings on grounds that are not substantial or material, and which do not go to the very merits of a cause, are no longer allowed. Now a demurrer must go to the heart of the cause, and if it is sustained it is a decision on the merits of the cause.

This conclusion has the sanction of a controlling Virginia case. See *Gimbert* v. *Norfolk Southern. R. Co.*, 152 Va. 684, 148 S. E. 680. In that case the defendant filed a plea of *res adjudicata* which the plaintiff moved to strike out. The motion was overruled and later the plea was sustained. A writ of error was allowed from the judgment sustaining the plea, and this court had this to say, pages 689, 690 and 691:

■ "There was no error in the court's action. The demurrer in the original action went to the merits of the case.

The court held that no case was stated in the declaration but gave the plaintiff leave to amend in thirty days and state a case if he could. This plaintiff failed to do and after thirty days the trial court had no further power over the case. A decision of an issue of law on a demurrer is a decision on the merits and constitutes *res adjudicata* as to any other proceedings where the same parties and the same issues are involved.

"In *Brunner* v. *Cook*, 134 Va. 266, 114 S. E. 650, this court, quoting from 15 R. C. L., sec. 438, page 962, said: 'When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.' 4 A. L. R., note 1174. A general demurrer which denies the right of the plaintiff to recover on the cause of action alleged, which is sustained, is a decision on the merits. *W., O. & W. R. Co.* v. *Cazenove*, 83 Va. 752, 3 S. E. 433; *Brechlin* v. *Night Hawk Min. Co.*, 49 Wash. 198, 94 Pac. 928, 126 Am. St. Rep. 863; *People* v. *Harrison*, 253 Ill. 625, 97 N. E. 1092, Ann. Cas. 1913-A, 541, note; *Cain* v. *Union Cent. L. Ins. Co.*, 123 Ky. 59, 93 S. W. 622, 124 Am. St. Rep. 313; 15 R. C. L., 'Judgments,' section 460, page 986. * * *

"The demurrer (which was a general demurrer) now under consideration, filed in the Princess Anne case, went directly to the merits and substance of the case. Special demurrers, which anciently dealt with matters of form, of course are abolished in Virginia, and only matters of substance can be grounds for demurrer. (Code, 1887, section 3272; Code, 1919, section 6118.) And the demurrer was not for want of jurisdiction."

In the opinion in that case other related Virginia cases are cited and discussed.

The appellant concedes the authority of the *Gimbert Case* but contends that divorce suits are not conducted as other suits, and for that reason the *Gimbert Case* does not apply. We think that her contention in this respect is incorrect.

Code, sec. 5106 (Michie), provides that divorce suits are to be instituted and conducted as other suits in equity, except (1) The bill is never taken for confessed; (2) The cause is heard independently of the admissions of either party, and a divorce will not be granted upon the uncorroborated testimony of either party; (3) Only authorized officers of this State are allowed to serve the process within this State.

Mr. Lile, in his notes on equity pleading and practice, in a foot note at page 151, explains that the reasons for these exceptions are obvious. He says that they tend to prevent collusion, an ever-threatening evil in divorce proceedings. He also suggests that if process were served by a private person a breach of peace might result, while if served by an officer a guarantee is afforded against a false return.

With the exceptions above noted, a divorce suit is conducted as other equity suits, and when warranted by the facts, a plea of *res adjudicata* may be filed in such a suit. That plea does not constitute one of the statutory exceptions.

Mr. Justice Spratley, speaking for the court in *McDaniel* v. *McDaniel*, 175 Va. 402, 408, 9 S. E. (2d) 360, said:

"The doctrine of *res adjudicata* applies as to all matters which existed at the time of giving the judgment or rendering the decree and which the plaintiff had the opportunity of bringing before the court. *Miller* v. *Miller*, 92 Va. 196, 23 S. E. 232; *Craig* v. *Craig*, 118 Va. 284, 87 S. E. 727; *Dagner* v. *Dagner*, 125 Va. 94, 99 S. E. 567; *Robinette* v. *Robinette*, 153 Va. 342, 149 S. E. 493; *Wright* v. *Wright*, 164 Va. 245, 178 S. E. 884; 34 Corpus Juris, Judgments, section 1162."

Applying that test to the case at bar, the second unit was clearly barred by the decree in the first, for all of the facts alleged in the second unit existed when the first bill of

complaint was filed. No new ground for divorce was alleged in the second suit, though there was a difference in the facts alleged. The ground in both suits was expressed as "cruelty amounting to constructive desertion". The appellant not only had the opportunity of bringing this ground for divorce between the court in the first suit but she had the opportunity, and it was her duty to bring before the court in the first suit any other ground for divorce that existed at that time. There was a final decree in the first cause rendered by a court of competent jurisdiction on the merits. It necessarily bars the appellant from conducting a subsequent suit involving the same cause of action.

In 30 Am. Jur., Judgments, sec. 165, the basis of the doctrine of *res adjudicata* is clearly stated:

"The doctrine of *res adjudicata* may be said to inhere in the legal systems of all civilized nations as an obvious rule of expediency, justice, and public tranquillity. Public policy and the interest of litigants alike require that there be an end to litigation which, without the doctrine of *res judicata*, would be endless. The doctrine of *res judicata* rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. The doctrine of *res judicata* not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings. * * * "

The decree is affirmed.

*Affirmed.*